IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 23-56-ELG |
| | ) | (Chapter 7) |
| JASON DANIEL LUTTRELL | ) | |
| | ) | |
| Debtor. | ) | |
| ———————————————— | ) | |
| | ) | |
| SARAH E. KREIGER TRUST, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Case No. 23-10020-ELG |
| | ) | |
| JASON DANIEL LUTTRELL | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

## **MOTION TO DISMISS**

Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
(202) 991-1101
mac@dcbankruptcy.com
*Counsel for the Debtor / Defendant*

## **TABLE OF CONTENTS**

I.     Introduction.................................................................................................... 1

II.    Standard ..................................................................................................... 2

III.   Plaintiffs' Allegations ................................................................................ 4

IV.   Argument: Dismissal of Each Count is Appropriate ......................................... 5

    a.  Count I is Forbade by Precedent.............................................................. 5

    b.  Fraud is Not Pleaded with the Requisite Particularity ................................. 7

    c.  Count II Does Not Present a Colorable Claim for Relief ............................ 9

    d.  Count III Evinces a Misapprehension of Controlling Law ........................ 11

    e.  Count IV Does Not Meet the Rigors of a Claim for Fraud....................... 12

V.    Conclusion ................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. USAA Cas. Ins. Co.*,
221 F.R.D. 250 (D.D.C. 2004) ................................................................................................ 3, 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................................................................... 2, 3, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................................... 2, 3, 8, 12

*Browning v. Clinton*,
292 F.3d 235 (D.C. Cir. 2002) ................................................................................................... 3

*Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*,
436 F. Supp. 3d 354 (D.D.C. 2020) ....................................................................................... 2, 3

*Conley v. Gibson*,
355 U.S. 41 (1957) ............................................................................................................... 3, 12

*DiLeo v. Ernst & Young*,
901 F.2d 624 (7th Cir. 1990) ..................................................................................................... 3

*Greenberg v. de Tessieres*,
902 F.2d 1002 (D.C. Cir. 1990) ................................................................................................. 5

*In re Aikin*,
2007 WL 3305364 (Bankr. D.D.C. 2007) .................................................................................. 7

*In re Britton*,
950 F.2d 602 (9th Cir. 1991) ..................................................................................................... 5

*In re Carmell*,
424 B.R. 401 (Bankr. N.D. Ill. 2010) ...................................................................................... 13

*In re Carpenter*,
453 B.R. 1 (Bankr. D.D.C. 2011) .............................................................................................. 6

*In re Casali*,
517 B.R. 835 (Bankr. N.D. Ill. 2014) ........................................................................................ 7

*In re Edmonds*,
924 F.2d 176 (10th Cir. 1991) ................................................................................................. 14

*In re Gadsden*,
128 B.R. 45 (Bankr. E.D.N.Y. 1991) ......................................................................................... 5

*In re Gerlach*,
897 F.2d 1048 (10th Cir. 1990) ............................................................................. 5

*In re Hibbs*,
568 F.2d 347 (3d Cir. 1977) .................................................................................. 5

*In re Irmen*,
379 B.R. 299 (Bankr. N.D. Ill. 2007) .................................................................. 13

*In re Lane*,
937 F.2d 694 (1st Cir. 1991) ................................................................................. 7

*In re Larson*,
136 B.R. 540 (Bankr. D. N.D. 1992) ..................................................................... 5

*In re Munson*,
2010 WL 3768017 (Bankr. N.D. Ill. 2010) ........................................................... 7

*In re Sestito*,
136 B.R. 602 (Bankr. D. Mass. 1992) ................................................................... 5

*In re Stewart*,
577 B.R. 581 (Bankr. W.D. Okla. 2017) ............................................................. 13

*In re Tam*,
136 B.R. 281 (Bankr. D. Kan. 1992) ..................................................................... 5

*In re Wall's Estate*,
440 F.2d 215 (D.C. Cir. 1971) ............................................................................. 10

*Kiviti v. Bhatt*,
Case No. 22-1217 (4th Cir. 2022) .......................................................................... 6

*Koch v. Koch Industries, Inc.*,
203 F.3d 1202 (10th Cir. 2000) ........................................................................... 14

*Kowal v. MCI Commc'ns Corp.*,
16 F.3d 1271 (D.C. Cir. 1994) ............................................................................... 3

*Morrison v. Potter*,
764 A.2d 234 (D.C. 2000) ................................................................................... 10

*Settle v. Settle*,
8 F.2d 911 (D.C. 1925) ................................................................................. 10, 11

*Thompson v. Columbia/HCA Health care Corp.*,
125 F.3d 899 (5th Cir. 1997) ................................................................................ 14

*United States ex rel. Sikkenga v. Regence BlueCross BlueShield of Utah*,
472 F.3d 702 (10th Cir. 2006) .............................................................................. 13

*United States v. Spicer*,
57 F.3d 1152 (D.C. Cir. 1995) ........................................................................... 5, 6

*Warman v. Strawberry*,
587 F.Supp. 109 (D.C. 1983) .............................................................................. 11

**Statutes**
11 U.S.C. § 523 ........................................................................................... 1, 5, 6, 8

11 U.S.C. § 727 ............................................................................................ *passim*

D.C. Code § 16-572 ................................................................................................ 9

**Rules**
Federal Rule of Bankruptcy Procedure 7012 ......................................................... 1

Federal Rule of Civil Procedure 8 ................................................................ 3, 12, 14

Federal Rule of Civil Procedure 9 ............................................................ 3, 7, 8, 14

Federal Rule of Civil Procedure 12 ....................................................................... 1

**Treatises**
Restatement (Second) of Torts § 548A (1977) ...................................................... 5

**Other Authorities**
A. Lansbury, *Beauty and the Beast* (Walt Disney 1991) ........................................ 1

Comes now Jason Daniel Luttrell ("Mr. Luttrell" or the "Debtor"), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 7012 and Federal Rule of Civil Procedure 12(b)(6), and moves this Honorable Court to dismiss the Complaint (i) to Determine Non-Dischargeability of Debt and (ii) Objecting to Discharge (the "Complaint," as found at DE #1) filed by Sarah E. Krieger ("Ms. Krieger"), Evan Klondar ("Mr. Klondar"), and the Sarah E. Krieger Trust ("SEKT") (Ms. Krieger, Mr. Klondar and SEKT being collectively known as the "Plaintiffs" and each known as a "Plaintiff"), and in support thereof states as follows:

## I.    Introduction

Three creditors obtained a judgment against a contractor who did not complete a given job, and now find themselves disheartened that the contractor seeks a fresh start in this Honorable Court. This case is very much a "[t]ale as old as time," A. Lansbury, *Beauty and the Beast* (Walt Disney 1991), with the Plaintiffs' frustration – while, perhaps, understandable in many respects – being unsupported by the variety of allegations requisite to deny Mr. Luttrell a discharge of his state court debt and/or his debts in general. The theories espoused in the Complaint come well short of that needed to achieve such relief under Sections 523 and 727 of Title 11 of the United States Code (the "Bankruptcy Code"), and it is thusly appropriate to dismiss this case at its incipiency.

At core, each count of the pleading is flawed in at least one critical – and, indeed, incurable – manner. While the Plaintiffs bemoan an absence of licensure in Count I, this Honorable Court long ago made clear that such cannot inform an action to deny the dischargeability of a given debt.[1]

---

[1] As noted *infra*, the well-pleaded allegations of the Complaint are assumed true for the sole and limited purpose of this motion. It bears notation, however, that Mr. Luttrell was a licensed contractor at all times relevant, and the Plaintiffs are well aware of this from their dealings in state court.

Equally, Count II of the Complaint posits that Mr. Luttrell deposited his wages into a bank account in his wife's name, so as to avoid garnishment, but altogether misses that (i) such would not prevent his wages from being garnished (something the Plaintiffs managed to do pre-petition); and (ii) this cannot inform a claim under Section 727 since the Plaintiffs' theory – that the subject account was, *de facto*, a joint account held by Mr. Luttrell's wife for the benefit of herself and her husband – is little more than an inadvertent recognition of the funds being exempt from collection under the District of Columbia's tenancy by the entireties doctrine. Meanwhile, Count III of the Complaint merits dismissal on the basis that it appears to misconstrue the record-keeping mandates of persons who might one day end up in bankruptcy. And Count IV bodes no better since it is premised upon immaterial allegations that cannot form the foundation of an allegation of fraud.

For these reasons, and as extrapolated upon *infra*, it is respectfully urged the Complaint be dismissed with prejudice. The Plaintiffs may be rightfully dismayed that a judgment they fought hard to win is now susceptible to discharge in bankruptcy, but such does not serve to meaningfully distinguish them from the scores of other creditors who regularly find frustration in the halls of this Honorable Court.

## II.    Standard

As recently observed by the United States District Court for the District of Columbia, "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 436 F. Supp. 3d 354, 357–58 (D.D.C. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim is facially plausible when the pleaded factual content 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Citizens*

2

*for Responsibility & Ethics in Washington*, 436 F. Supp. 3d at 357–58 (quoting *Iqbal*, 556 U.S. at 678). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Indeed, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545 (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In evaluating a motion to dismiss, "the court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept plaintiff's legal conclusions." *Citizens for Responsibility & Ethics in Washington*, 436 F. Supp. 3d at 357–58 (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)).

Further, where, as here, a pleading sounds in fraud or intentional misrepresentation, a heightened pleading standard is imposed whereby "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Specifically:

> Rule 9(b) requires that the pleader provide the "who, what, when, where, and how" with respect to the circumstances of the fraud. Following the same line of reasoning, a pleading subject to Rule 9(b) scrutiny may not rest on information and belief, but must include an allegation that the necessary information lies within the opponent's control, accompanied by a statement of the facts on which the pleader bases his claim.

*Anderson v. USAA Cas. Ins. Co.*, 221 F.R.D. 250, 253 (D.D.C. 2004) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990), cert. den'd, 498 U.S. 941 (1990); citing *Kowal*, 16 F.3d at 1279 n. 3).

### III.    Plaintiffs' Allegations

While at least one of the Plaintiffs' allegations is a patent falsity, Mr. Luttrell does not wish for this motion to be regarded as one for summary judgment, and the various assertions set forth in the Complaint are accordingly assumed true for the expressly limited purpose of assessing the sufficiency, *vel non*, of the pleading. The crux of those assertions is fourfold:

1.      Mr. Luttrell operated as an unlicensed contractor in the District of Columbia, deceiving the Plaintiffs into believing he carried such licensure. *See* Complaint, DE #1, at ¶¶ 12, 58. The Debtor's former business also erred in representing the total cost of the project for which it was being engaged by the Plaintiffs. *Id.* at ¶¶ 13-14.

2.      Mr. Luttrell subsequently became employed by a third party, *Id.* at ¶ 18, but directed his wages be deposited into a bank account in the name of his lawful wife, *Id.* at ¶¶ 19, 65. The Plaintiffs posit this was done at a time when Mr. Luttrell "had one or more unsecured creditors…" *Id.* at ¶ 66.

3.      When Mr. Luttrell wound up his contracting business, he did not preserve all of the company's records but, rather, maintained "a folder with financial documents in it." *Id.* at ¶ 72.

4.      In filing this case Mr. Luttrell (i) scheduled personal liability on an SBA loan for which he may not, after all, be personally liable; (ii) omitted a *de minimis* debt to his former counsel; (iii) included a monthly mortgage payment, even though only his wife is personally liable on the obligation; and (iv) did not identify his wife's accounts as his own. *Id.* at ¶¶ 81-86.

Putting aside myriad "immaterial, impertinent, or scandalous" allegations, Fed. R. Civ. P. 12(f), the foregoing is the crux of the Complaint. These are the wrongs the Plaintiffs surmise to be meritorious of denying Mr. Luttrell a discharge of his obligation to them and/or a discharge in general; there is no more. And, as is discussed below, this is of palpable import, inasmuch as the

4

Plaintiffs do not merely fall well short of the standard requisite to pleading fraud but, indeed, the Complaint comes nowhere near setting forth the variety of fodder needed to underpin the four enumerated causes of action.

### IV.   Argument: Dismissal of Each Count is Appropriate

#### a.   Count I is Forbade by Precedent

The Plaintiffs posit – counterfactually – that Mr. Luttrell was not a licensed contractor when he held himself out as one and, ergo, he has committed the sort of fraud requisite to render a resulting debt nondischargeable under Section 523 of the Bankruptcy Code. In so doing, however, they overlook the express precedent of this Honorable Court that makes clear a false assertion as to a contractor's licensure is *per se* insufficient to inform a claim for fraud or misrepresentation because no one can reasonably rely upon the District of Columbia's licensure regime as being an imprimatur of quality, knowhow, or ability.

As the United States Court of Appeals for the District of Columbia Circuit has observed, "[p]roximate causation—loss or damage to the creditor 'as a proximate result of' the debtor's misrepresentation—is an element that must be proved in order to establish nondischargeability under § 523(a)(2)(A). And in general, the causation element in fraud cases demands more than mere 'but-for' causation." *United States v. Spicer*, 57 F.3d 1152, 1157 (D.C. Cir. 1995) (citing *In re Britton*, 950 F.2d 602, 604 (9th Cir. 1991); *In re Sestito*, 136 B.R. 602 (Bankr. D. Mass. 1992); *In re Larson*, 136 B.R. 540 (Bankr. D. N.D. 1992); *In re Tam*, 136 B.R. 281 (Bankr. D. Kan. 1992); *In re Gadsden*, 128 B.R. 45 (Bankr. E.D.N.Y. 1991); *In re Gerlach*, 897 F.2d 1048, 1051 (10th Cir. 1990); *Greenberg v. de Tessieres*, 902 F.2d 1002, 1004 (D.C. Cir. 1990); *In re Hibbs*, 568 F.2d 347 (3d Cir. 1977); Restatement (Second) of Torts § 548A (1977)).

This Honorable Court, in turn, has recognized that because the District of Columbia's licensure protocols for home contractors do not require any showing of skill, no consumer could reasonably rely upon a representation of licensure for purposes of forming a Section 523 claim:

> Although the regulations are more than just a revenue raising measure, and are intended to protect consumers from victimization, they are nevertheless not designed to assure that licensed contractors are competent to perform work: no showing is required that a contractor is competent in the field of home improvement work in order to obtain a license. In contrast, 17 D.C. Mun. Reg. §§ 305 and 306 impose a requirement of an examination regarding installation of air conditioning equipment in order to be licensed to perform such installation work. Because the regulations at issue are not designed to assure that Carpenter was competent to perform the required work, Wyatt's reliance on Carpenter's being licensed cannot be said to be the proximate cause of her loss based on any assumption by her that Carpenter's representation that he was licensed meant that he was competent to do the work.

*In re Carpenter*, 453 B.R. 1, 10–11 (Bankr. D.D.C. 2011).[2]

There exists a rather sound policy argument that the District of Columbia should not issue a contractor's license to anyone who can complete paperwork and tender a fee. There, equally, exists an argument that the municipal government does a disservice to its citizenry by maintaining such a Kafkaesque regime. But so long as such remains the extant condition of local law, the *Carpenter* holding informs cases of precisely this variety: as a matter of law, no one can rely on local licensure to fulfil the proximate causation rigor recognized by the *Spicer* Court, its internal authorities, and its progeny. And such militates in favor of dismissal of Count I of the Complaint.

---

[2] By way of requisite ethical disclosure, undersigned counsel represents the appellants in a currently-pending case before the United States Court of Appeals for the Fourth Circuit, in which he has characterized the *Carpenter* holding as "dicta" and "an oddity." *See Kiviti v. Bhatt,* Case No. 22-1217 (4th Cir. 2022). Oral argument was held in the *Kiviti* matter earlier this year, with the case currently being submitted and under advisement. Should a topically-relevant ruling be issued during the pendency of this motion, undersigned counsel will, of course, file a supplement to so inform this Honorable Court.

### b.  Fraud is Not Pleaded with the Requisite Particularity

To whatever extent the Plaintiffs rely on a representation other than Mr. Luttrell's licensure as the basis for Count I of the Complaint, dismissal is still appropriate for the simple reason that such has not been pleaded with the particularity demanded by Federal Rule of Civil Procedure 9. A generalized proclamation that a contractor went over budget does not nearly satisfy this cognizantly-demanding rigor, and nowhere in the 89 paragraphs of the pleading may be found the sort of precise series of allegations requisite to survive a motion to dismiss.

Familiarly, "Rule 9(b)'s heightened pleading standard is applicable to claims brought under § 523(a)(2)(A)…" *In re Aikin*, 2007 WL 3305364, at *2 (Bankr. D.D.C. 2007). *See also*, *In re Casali*, 517 B.R. 835, 841 (Bankr. N.D. Ill. 2014) ("The particularity requirement of Rule 9(b) applies equally to all claims based upon an underlying fraud, including fraud claims under § 523(a)(2)(A).") (citing *In re Munson*, 2010 WL 3768017 (Bankr. N.D. Ill. 2010) (quoting *In re Lane*, 937 F.2d 694, 698 (1st Cir. 1991))).

Further, and as noted *supra*, Rule 9(b) "requires that the pleader provide the 'who, what, when, where, and how' with respect to the circumstances of the fraud." *Anderson*, 221 F.R.D. at 253.

While the Complaint never states the "when" as to Mr. Luttrell's representation of licensure, the pleading does otherwise appear to satisfy the rigors of Rule 9(b) on that sole and limited front. But to the extent the Plaintiffs assert some other false representation was made, they do not set forth the facts of such counterfactual utterance in a manner compliant with these requirements.

At one point, the Plaintiffs assert that "[i]n connection with the marketing of their services to Plaintiffs, Debtor and Review made material misrepresentations and material omissions."

Complaint, DE #1, at ¶ 59. This assertion does not merely fail to set forth the "who, what, when, where, and how" obligated by Rule 9; this assertion is, too, the variety of threadbare, "formulaic recitation" forbade by the *Twombly* Court. And while the Complaint does contain certain other vague assertions of falsities being proffered, such are never accompanied by the detail required to survive a motion to dismiss.

To be sure, this is not a matter of form over substance. To whatever extent some other false representation is being alleged, it is altogether necessary such be pleaded – with the requisite "who, what, when, where, and how" – so the Complaint can be assessed for reasonable reliance. By way of anecdote, the Plaintiffs seem to suggest they were given a misleading update as to the status of their project. *See* Complaint, DE #1, at ¶ 15. But, notably, the Plaintiffs never specify if that update was furnished by Mr. Luttrell or someone else. Nor do the Plaintiffs identity how that could have caused them to incur any damages; it appears the misleading update was given on December 2, 2018 – more than a year *after* the Plaintiffs engaged Mr. Luttrell's former company to do work, *Id.* at ¶ 10.

Equally, the Plaintiffs seem to suggest Mr. Luttrell's prior entity agreed to do work at a price of $138,520, *Id.* at ¶ 13, but then charged $237,038.60, *Id.* at ¶ 14. More detail is needed to understand who made the initial representation, how it was made, and what specifically constituted the representation (i.e., a generalized "rough budget" or a hardened "all-inclusive quote not subject to alteration"). If the Plaintiffs secured a flat contractual rate and were then charged more, they may well have had a decent claim against Mr. Luttrell's former company for breach of contract. But such would hardly inform an action under Section 523. And, in the absence of the demanding specificity required by Rule 9(b), it is impossible to properly assess the extent, *vel non*, to which these ambiguous semi-allegations may aid a proper claim for relief.

### c.   Count II Does Not Present a Colorable Claim for Relief

The Plaintiffs next contend that Mr. Luttrell should be denied a discharge because he deposited his paychecks (or, as it is, had his wages directly deposited) into his wife's bank account. In so doing, however, the Plaintiffs seem to miss that (i) such would not have inhibited them from directly garnishing the Debtor's wages (something the Plaintiffs did); and (ii) the allegations of the Complaint do little more than suggest the subject bank account be regarded as a tenancy by the entireties asset – something that would be exempt from collection in any event. If Mr. Luttrell was siphoning money to a Cayman Islands trust, stashing cash in a friend's safe deposit box, or orchestrating a series of fraudulent conveyances, Count II might have some merit. But the allegation, as presently constituted, is that one spouse put money into the other spouse's bank account; if such were fodder for attack under Section 727, scarce would be the married debtor who could benefit from petitioning for Chapter 7 relief.

The denial of a discharge under Section 727(a)(2)(A) of the Bankruptcy Code requires a litigant demonstrate "the debtor, **with intent to hinder, delay, or defraud a creditor** … has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed -- (A) property of the debtor, within one year before the date of the filing of the petition…" 11 U.S.C. § 727(a)(2)(A) (emphasis added).

Here, it is altogether unclear how one could intend to hinder, delay, or defraud a creditor by directing where wages are deposited, since wages are readily garnishable pre-deposit in the District of Columbia. *See* D.C. Code § 16-572(1)(A) ("Where an attachment is levied upon wages due a judgment debtor from an employer-garnishee, the attachment shall become a lien and a continuing levy upon the gross wages due or to become due to the judgment debtor for the amount specified in the attachment to the extent of 25% of the amount by which the judgment debtor's

disposable wages for that week exceed 40 times the minimum hourly wage, as prescribed in [§ 32-1003] ('minimum hourly wage'), in effect at the time the wages are payable.").

Indeed, what the Plaintiffs appear to posit is that even though they could (and did) directly garnish Mr. Luttrell's wages, Mr. Luttrell sinned by having the non-garnishable portion of his pay deposited into a bank account in the name of his wife. This theory simply does not hold up; placing one's wages in a spouse's bank account cannot possibly be an act to "hinder, delay, or defraud" creditors, inasmuch as the creditors remain able to garnish wages pre-deposit (just as the Plaintiffs did here).

Equally, the theory espoused by the Plaintiffs here ultimately fails inasmuch as such amounts to a suggestion that, notwithstanding the bank account being titled solely in the name of his wife, Mr. Luttrell and his spouse used her depository account as a joint asset. If so, such would be consistent with the "common-law theory that husband and wife are one person." *Morrison v. Potter*, 764 A.2d 234, 236 (D.C. 2000) (quoting *In re Wall's Estate*, 440 F.2d 215, 217 (D.C. Cir. 1971) (citing *Settle v. Settle*, 8 F.2d 911, 912 (D.C. 1925))).

Yet, again, this invites a necessary flaw in any theory of intent. Under District of Columbia law, if the subject bank account were joint in nature (as the Plaintiff seems to passively intimate), such could simply be titled accordingly and exempt from all collection by a creditor of Mr. Luttrell.[3] Indeed, and somewhat critically, "…this jurisdiction essentially employs a presumption that property, including bank accounts, held by a husband and wife as joint tenants is held by the entireties, unless proof of a contrary intent leads to a different result." *Morrison*, 764 A.2d at 237

---

[3] Notably, the Complaint does not allege Mr. Luttrell's non-filing spouse to be indebted to the Plaintiffs which, rather properly, is because she is not.

(citing *Warman v. Strawberry*, 587 F.Supp. 109, 110 (D.C. 1983) (referencing *Settle*, 8 F.2d at 912))).

Count II of the Complaint thusly amounts to an allegation that Mr. Luttrell intended to secrete monies from the Plaintiffs by depositing the non-garnishable portion of his W-2 wages into a bank account that could have just as easily been titled as a tenancy by the entirety asset (and that would be such an asset if recharacterized to recognize Mr. Luttrell's wages as an extant asset of his). This is simply not a theory capable of surviving scrutiny, and accordingly cannot inform a claim under Section 727 of the Bankruptcy Code.

### d. Count III Evinces a Misapprehension of Controlling Law

The Complaint next theorizes that once Mr. Luttrell's former business was ruined by the Plaintiffs' claims, his failure to fully archive records invites, in turn, a denial of his discharge. The Plaintiffs note that Mr. Luttrell did keep business records in a folder, and they do not point to any pertinent records allegedly missing from that folder. But the Complaint nevertheless surmises that the now-infamous folder is fodder sufficient to impose the Bankruptcy Code's harshest non-criminal sanction.

Section 727(a)(3) permits the denial of a discharge where "the debtor has concealed, destroyed, mutilated, … or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3).

Here, the Plaintiffs never identify what records were allegedly destroyed or lost. Nor can they, since – despite being afforded a lofty 90 day extension of the time to file this case, so as to permit pre-suit discovery – they never much concerned themselves with the sum and substance of

the records retained in Mr. Luttrell's folder. They only know that when a small business was shuttered by the weight of their state court litigation, a pristine archiving process was not undertaken. And for that, they urge Mr. Luttrell ought to be denied a discharge.

Absent some colorable allegation that the subject records would meaningfully touch upon Mr. Lutrrell's "financial condition or business transactions," however, Count III cannot survive dismissal. And while such is alleged, the relevant assertion is an exemplar of the threadbare form of recital prohibited by *Iqbal* and *Twombly*. *See* Complaint, DE #1, at ¶ 74 ("The books, documents, records, and papers relating to Review that Debtor has failed to keep or preserve are books, documents, records, and papers from which Debtor's financial condition or business transactions might be ascertained").

As noted *supra*, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545 (quoting Fed. R. Civ. P. 8(a)(2); *Conley*, 355 U.S. at 47). The Plaintiffs have not offered anything more than those taboo "labels and conclusions" here, and they have thusly failed to set forth a claim for which relief may be granted.

### e.   Count IV Does Not Meet the Rigors of a Claim for Fraud

Finally, the Plaintiffs once again accuse Mr. Luttrell of fraud – without adhering to the exacting rigors of Rule 9(b) – by positing that he (i) failed to disclose an interest in his wife's accounts (something that, as discussed above, would render the same fully-exempt assets); (ii) scheduled personal liability on an SBA loan he may not have actually guaranteed; (iii) scheduled a concluded litigation matter but neglected to schedule the correlative judgment debt; and (iv) omitted from his schedules a *de minimis* obligation to his prior counsel. These are each, facially,

leading indicia of human fallibility. These are not, however, assertions that come anywhere close to constituting fraud.

Count IV of the Complaint is brought under Section 727(a)(4) of the Bankruptcy Code, which permits the denial of a discharge where:

> …the debtor knowingly and fraudulently, in or in connection with the case--
>
> (A) made a false oath or account;
>
> (B) presented or used a false claim;
>
> (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
>
> (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs…

11 U.S.C. § 727(a)(4).

Since the foregoing language expressly turns on a showing of fraud, such a cause of action must be pleaded in accord with Rule 9(b). *See, e.g.*, *In re Carmell*, 424 B.R. 401, 418 (Bankr. N.D. Ill. 2010) ("Since § 727(a)(4)(A) requires that debtor acted fraudulently, pleading a claim under this section is subject to Rule 9(b) Fed.R.Civ.P., made applicable by Rule 7009 Fed. R. Bankr.P., which requires allegations of fraud to be pleaded with particularity.") (citing *In re Irmen*, 379 B.R. 299, 310 (Bankr. N.D. Ill. 2007)); *In re Stewart*, 577 B.R. 581, 585 (Bankr. W.D. Okla. 2017) ("At the outset, an element of any claim under § 727(a)(4) is fraudulent intent. Thus, the complaint must meet the particularity requirements of Rule 9(b). To plead fraud adequately, a plaintiff must 'set forth the who, what, when, where and how of the alleged fraud.' In other words, a complaint alleging fraud must identify the 'time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'") (quoting *United States ex rel. Sikkenga v. Regence BlueCross BlueShield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006)

(quoting *Thompson v. Columbia/HCA Health care Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)); *Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting *In re Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991))).

Here, none of the four allegations underlying this count constitute a claim of fraud. The idea that Mr. Luttrell scheduled the SBA as a creditor, when he may not have actually guaranteed the underlying debt, advances no discernable fraudulent motive. Unless the Debtor were in cahoots with the United States to (i) have his no-asset estate transmuted into an estate capable of disbursing funds; (ii) have the federal government file a fraudulent proof of claim; and (iii) somehow gain something of value from the government's fraudulent proof of claim, there can be no fraud afoot in connection with this allegation.

Similarly, listing a litigation matter on the statement of financial affairs, but failing to list the counterparty as a creditor, hardly amounts to a showing of fraud. If the Plaintiff could show some sly, deceptive motive for so doing, there might be more to ponder. But, as-pleaded, this theory does not meet the rigors of Federal Rule of Civil Procedure 8 – much less those of Federal Rule of Civil Procedure 9. And the same necessarily goes for omitting a *de minimis* judgment in favor of Mr. Luttrell's former counsel.

This leaves only the Plaintiffs' theory that Mr. Luttrell was bound to list his wife's accounts as being amongst his assets, since he has an interest therein. *See* Complaint, DE #1, at ¶¶ 81-82. And this is, perhaps, the theory that best epitomizes why the Complaint, taken as a whole, warrants dismissal: the Plaintiffs seem to be suggesting that Mr. Luttrell and his wife hold a joint interest in financial accounts which, per *Morrison*, would render those accounts exempt from collection by the Plaintiffs, by the Chapter 7 trustee, and by just about anyone else (saving, perhaps, the Internal Revenue Service). There is no discernable reason someone would intentionally fail to schedule a

tenancy by the entirety account; doing so advances no apparent purpose – especially in a case where creditors, like the Plaintiffs, come armed with voluminous records gleaned from state court discovery. In the absence of such, there simply cannot be any fraud.

### V.      Conclusion

There is an interesting omission from the Complaint: the Plaintiffs never allege Mr. Luttrell made off with any of their money. To the contrary, they assert his business was so troubled as to resort to the increasingly-notorious realm of taking out merchant cash advances, Complaint, DE #1, at ¶ 17, and that Mr. Luttrell had to borrow money from his own mother just to make payroll, *Id.* The business failed and the Debtor took the humbling step from being his own boss to being a W-2 employee on the payroll of another. Chastened, he now seeks a fresh start.

This is not an atypical story. The Bankruptcy Code may offer scant relief to the Plaintiffs but so, too, does it offer only minimal relief to Mr. Luttrell. Yes – he will get a discharge, but no – he will not regain his business, he will not suddenly be paid wages for the months when his company was failing, and he will not be able to undo the veritable nightmare through which he has lived. And in this regard, the saga playing out *sub judice* differs materially from the aforementioned "story as old as time," with there being no happy ending in sight. But an ending is nonetheless in order, and that instantly takes the necessary form of the Complaint being dismissed.

*[Signature on Following Page]*

15

Respectfully submitted,

Dated: September 1, 2023                    By: /s/ Maurice B. VerStandig
                                                Maurice B. VerStandig, Esq.
                                                Bar No. MD18071
                                                The Belmont Firm
                                                1050 Connecticut Avenue, NW
                                                Suite 500
                                                Washington, DC 20036
                                                (202) 991-1101
                                                mac@dcbankruptcy.com
                                                *Counsel for the Defendant*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of September, 2023, a copy of the foregoing

was served electronically upon filing via the ECF system.

                                                /s/ Maurice B. VerStandig
                                                Maurice B. VerStandig

16