Katie Lane Chaverri (DC Bar No. 502976)
Jeffrey Rhodes (DC Bar No. 456371)
Tayman Lane Chaverri LLP
2001 L Street NW, Suite 500
Washington, DC 20036
kchaverri@tlclawfirm.com (202-695-8146)
jrhodes@tlclawfirm.com (202-921-4080)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **In re:** | ) **Chapter 7** |
| | ) |
| **JASON DANIEL LUTTRELL,** | ) **Case No. 23-00056-ELG** |
| | ) |
| **Debtor.** | ) |
| | ) |
| **SARAH KRIEGER, ET AL.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Adv. Proceeding No. 23-10020-ELG** |
| v. | ) |
| | ) |
| **JASON DANIEL LUTTRELL,** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |

## OPPOSITION TO MOTION TO DISMISS

Creditors and Plaintiffs Sarah E. Krieger Trust, Sarah E. Krieger and Evan Klondar

("Plaintiffs"), by counsel, pursuant to Local Rule 9013-1(e), and in opposition to the Motion to

Dismiss (the "Motion") (D.E. 6) filed by Jason Daniel Luttrell ("Luttrell" or the "Debtor")

respectfully state as follows:

### I.      Introduction

In the Complaint, Plaintiffs sufficiently allege facts in support of four counts against the

Debtor: (i) determination of nondischargeability, pursuant to 11 U.S.C. § 523(a)(2)(A), of a debt

based on a final judgment of the Superior Court of the District of Columbia ("Superior Court")

that conclusively establishes Debtor's false representations and Plaintiffs' reliance on those false representations in entering into the underlying renovation contract; (ii) determination of nondischargeability pursuant to 11 U.S.C. § 727(a)(2)(A) based on the Debtor's transfer, removal, destruction, mutilation, or concealment of property of the Debtor within one year before the petition date; (iii) determination of nondischargeability pursuant to 11 U.S.C. § 727(a)(3) based on the Debtor's failure to keep or preserve recorded information including books, documents, records, and papers related to his business; and (iv) determination of nondischargeability pursuant to 11 U.S.C. § 727(a)(4)(A) based on the Debtor's false statements and omissions made in connection with this case under penalty of perjury.

The Debtor makes several arguments in favor of dismissal of Plaintiff's Complaint that, as further explained below, are lacking in merit. Debtor's arguments are based either on a misreading of the law and/or a selective reading of cherry-picked allegations in the Complaint. And significantly, regarding Plaintiffs' claim under section 523(a)(2)(A) for a determination that the debt owed to the Plaintiffs is nondischargeable, Debtor ignores that, as set forth in detail in the Complaint, the Superior Court already conducted an evidentiary hearing, heard proof supporting its findings as to Debtor's false representations and Plaintiffs' reliance on such false representations in entering into the renovation contract, and entered judgment in favor of Plaintiffs and against the Debtor. This judgment (which the Debtor did not to appeal and is therefore final) conclusively establishes the factual predicate for Plaintiffs' section 523(a)(2)(A) claim and defeats Debtor's arguments that the allegations in the Complaint are not pleaded with the requisite particularity.

While the Debtor would like this Court to believe that he is the archetypal "honest but unfortunate debtor" who should be entitled to a "fresh start," and that Plaintiffs' judgment issued by the Superior Court is merely one sounding in breach of contract, this is simply not true. On

January 31, 2022, the Superior Court entered an Order Granting Motion for Default Judgment (the "Judgment")[1] in favor of the Plaintiffs on their Verified Complaint ("Verified Complaint"), awarding them damages for violations of the DC Consumer Protection Procedures Act ("CPPA")[2] based on representations by Debtor and his wholly owned company, Review Development LLC ("Review") that were false and relied upon by Plaintiffs in entering into a home renovation contract. The false representations regarding the Debtor's and Review's licensure and abilities, and Plaintiffs' reliance thereon, which are set forth in the Verified Complaint and established pursuant to the Judgment, are addressed in the Complaint filed in this action. As further explained below, the Complaint contains sufficient factual matter, accepted as true for purposes of Debtor's Motion, that state claims for relief that are plausible on their face as to each of the four counts in the Complaint.

## II.    **Standard**

In determining whether to grant a motion to dismiss under Rule 12(b)(6), a court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.,* 436 F. Supp. 3d 354, 357–58 (D.D.C. 2020) (quoting *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted)). Thus, a court must construe a complaint liberally in favor of the plaintiff. *Id.; see also Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents

---

[1] A true and correct copy of the Judgment resulting from D.C. Sup. Ct. Case No. 2020CA004714B, which Plaintiffs reference in paragraph 38 of the Complaint, is attached hereto as Exhibit "A" for the Court's ease of reference.

[2] D.C. Code § 28-3905 (k)(1)(A) provides that a consumer may bring an action seeking relief from the use of a trade practice in violation of a law of the District. D.C. Code § 28-3905. Section 3904 of the CPPA contains a list of potential violations arising from misrepresentations and fraud. *See* D.C. Code § 28-3904.

attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Id*. at 358 (quoting *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (internal citation omitted)).  A court will dismiss a claim pursuant to Rule 12(b)(6) only if the defendant can demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Gustave-Schmidt*, 226 F. Supp. 2d at 196.

III.   **<u>Argument</u>**

**A. Plaintiffs Have Alleged Sufficient Facts to State a Plausible Claim of Nondischargeability of Debt Based on The Debtor's False Pretenses, False Representations or Actual Fraud Pursuant to 11 U.S.C. § 523(a)(2)(A).**

The crux of the Debtor's argument for dismissal of Count I (determination of nondischargeability pursuant to 11 U.S.C. § 523(a)(2)(A)) is that the Debtor's false representations as to the status of his licensure as a contractor in the District of Columbia does not rise to the level necessary to "inform a claim for fraud or misrepresentation because no one can reasonably rely upon the District of Columbia's licensure regime as being an imprimatur of quality, knowhow or ability."  Motion at p.5.  As an initial matter, Debtor fails to mention that the Complaint alleges misrepresentations beyond licensure, including misrepresentations about Debtor's and Review's capabilities as contractors.  *See, e.g.,* Complaint at ¶ 11.  But more fundamentally, Debtor's argument is based on a misreading of this Court's decision in the case of *Wilcox v. Carpenter (In re Carpenter)*, 453 B.R. 1 (Bankr. D.C. 2011).  Quite simply, *Carpenter* is not an impediment to Plaintiffs' section 523(a)(2)(A) claim.

In *Carpenter*, the plaintiff obtained a judgment in the Superior Court awarding disgorgement of compensation paid to the contractor based on a District of Columbia law – 16 D.C. Mun. Reg. § 800.1 - that "requires an unlicensed contractor to disgorge any compensation received if the contractor accepted compensation prior to completing a job." *In re Carpenter*, 453

B.R. at 2-3.  The issue before the Court was whether such a disgorgement award, which entitles a plaintiff to a return of all moneys paid to the contractor regardless of whether (i) the plaintiff knew the contractor was unlicensed, (ii) the contractor misled the plaintiff about his licensure, and (iii) the contractor performed the work in a competent manner, *id*. at 3, is a debt for property obtained by fraud.  *Id*.  Answering the question in the negative, the Court concluded that "Carpenter's obligation to disgorge compensation was pursuant to a rule of law (D.C.M.R. § 800.1 and the decisions adopting a disgorgement remedy for violation of that regulation) that required no showing of harm proximately caused by a knowing misrepresentation."  *Id*. at 5.

Critically, unlike the underlying judgment in *Carpenter*, the Judgment entered in favor of Plaintiffs here is not based on a disgorgement remedy, but rather is based on actual and treble damages caused by Plaintiffs' reliance on the Debtor's and Review's false representations as to their licensure and capabilities as contractors.  And while the Court in *Carpenter* determined that the underlying claim for disgorgement was not subject to a nondischargeability action, the Court also recognized that the plaintiff in that case "would be entitled to a determination of nondischargeability if she can show that she relied on Carpenter's representation that he was licensed because she had reason to believe that she would be better off, with respect to the harm she suffered, if Carpenter had been licensed."  *Id*. at 11.  As set forth in the Verified Complaint, the Judgment, and in the Complaint at bar, "Debtor and Review made various misrepresentations regarding Debtor's and Review's *licensure and their abilities* that were false and that were relied upon by Plaintiffs."  *See* Complaint at ¶ 11 (emphasis added).

And as the Superior Court found in the Judgment, Plaintiffs relied upon the false representations by Luttrell and Review that they were "properly licensed and capable contractors" in entering into the underlying renovation contract, and incurred damages as a result.  *See* Judgment, Exhibit "A" at p.1.  Accordingly, while the disgorgement award in *Carpenter* was

determined to be nondischargeable because "no showing of fraud is required for a disgorgement order, and the disgorgement remedy is not for a loss proximately caused by Carpenter's misrepresentation," *id*. at 13, the damages awarded Plaintiffs in the Judgment were based on the reasonably foreseeable consequences of the false representations made by Debtor and Review.  *Id*. at 8; *see also U.S. v. Spicer,* 57 F.3d 1152, 1158-59 (D.C. Cir. 1995) (discussing proximate causation).

The Debtor further argues that Plaintiffs do not provide the requisite detail to support Rule 9(b)'s heightened pleading standard.  As an initial matter, Rule 9 should be read in conjunction with Rule 8, which requires that a pleading contain "a short and plain statement showing that the pleader is entitled to relief." Fed. R. Civ. P. 8; *see United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1386 (D.C.Cir.1981) ("Rule 9(b) is not ... to be read in isolation from other procedural canons. As Professor Moore notes, '[t]he requirement of particularity does not abrogate Rule 8, and it should be harmonized with the general directives in subdivisions (a) and (e) of Rule 8 that the pleadings should contain a 'short and plain statement of the claim or defense' and that each averment should be 'simple concise and direct.'") (internal citations omitted).

Here, the Complaint properly alleges the "who, what, when, where, and how" necessary to meet the applicable pleading standard by, among other things, referencing the Verified Complaint and Judgment entered by the Superior Court, which established that Plaintiffs relied on false statements made by Debtor and Review when entering into the renovation contract, and incurred actual and other damages as a result.[3]  Further detail is not required under the circumstances.  The

---

[3] The Superior Court's final judgment in Plaintiffs' favor bars the Debtor from relitigating issues that were actually determined by the DC Superior Court.  Where a debtor has already had their "day in court" and seeks to utilize the bankruptcy process to avoid a judgment suffered as a result of fraud, false pretenses or false representations, the Debtor is barred from relitigating facts established by the court that issued the judgment.  *See, e.g., In re Corey*, 583 F.3d 1249, 1252-1253 (10th Cir. 2009) (The purposes of issue preclusion are promoted by preclusion where the burden of litigating fraud is resolved consistently by two courts and is likely to discourage obstructive and delaying tactics); *In re Snyder,* 939 F.3d 92 (2d Cir. 2019)

heightened pleading standard for allegations of fraud furthers three important purposes: (1)

providing due notice to defendants; (2) providing increased protection from possibly defamatory

statements; and (3) decreasing the number of frivolous lawsuits. *In re Piazza*, 605 B.R. 332, 335

(Bankr. M.D. Pa. 2019). These concerns are not implicated here, and the factual content of the

Complaint is more than sufficient to permit the Court to draw the reasonable inference that

Plaintiffs' claim pursuant to the Judgment is plausibly non-dischargeable. *Id.*[4]  In sum, Plaintiffs

have sufficiently met their pleading burden under section 523(a)(2)(A) and the Court should deny

the Debtor's Motion.

### B.  Count II of the Complaint States a Plausible Claim for Relief.

In Count II of the Complaint, Plaintiffs allege that the Debtor, within one year before the

Petition Date and with intent to hinder, delay or defraud one or more of his creditors, caused his

employer to deposit the Debtor's wages directly into a bank account (the "CSB Account") owned

solely by his wife, thereby violating Section 727(a)(2)(A) of the Bankruptcy Code.  As alleged in

the Complaint, although the Debtor had his own bank account that he had previously used for

almost twenty (20) years, he allowed his bank account to be closed and caused his wages to be

transferred to his wife when he and his wholly owned contracting company, Review, were in

---

(where the default judgment is entered as a sanction for bad conduct, and the party being estopped had the opportunity to participate in the underlying litigation, the default judgment has preclusive effect when determining the nondischargeability of a debt in a bankruptcy proceeding); *Federal Deposit Insurance Corp. v. Daily* (*In re Daily*), 47 F.3d 365, 368 (9th Cir.1995)(recognizing that "'actual litigation' requirement may be satisfied by substantial participation in an adversary contest in which the party is afforded a reasonable opportunity to defend himself on the merits but chooses not to do so.").

[4] Should the Court determine Plaintiffs must provide further specificity as to the allegations contained in the Complaint, Plaintiffs respectfully request leave to amend pursuant to Fed.R.Civ.P. 15(a)(2) to correct any such deficiencies.  Rule 15(a)(2) provides that a party may amend its pleading with leave of court and that the "court should freely give leave when justice so requires." *Id.*; *In re BHI Int'l, Inc.,* No. 12-00039, 2012 WL 3733548, at *1 (Bankr. D.D.C. Aug. 28, 2012).  In this case, where this adversary proceeding is in the early stages of litigation and no discovery has yet been conducted, Plaintiffs respectfully submit that the Debtor would not be unfairly prejudiced because any amendments would not alter the character of the litigation.

financial distress and subject to pending litigation claims.  *See* Complaint at ¶¶ 16 – 23, 25-26, 33, 43.

In response, the Debtor argues that Count II should be dismissed on the grounds that the Debtor could not have acted with intent to hinder, delay or defraud one or more of his creditors because (i) the transfers to his wife would not prevent a direct garnishment of the Debtor's wages against his employers, *see* Motion at pp. 9-10, and (ii) his wife's bank account "could have just as easily been titled as a tenancy by the entirety asset," in which case the account would be exempt from collection by creditors holding claims solely against Debtor.  *Id*. at p. 10.  The Debtor's arguments lack merit.

As the Debtor acknowledges in his Motion, an attachment of wages owed to a judgment debtor from an employer-garnishee is subject to a statutory cap. Under District of Columbia law, the most that can be garnished from wages is 25% of the amount by which a judgment debtor's disposable wages for a particular week exceed 40 times the minimum hourly wage.  *See* D.C. Code § 16-572(1)(A) ("Where an attachment is levied upon wages due a judgment debtor from any employer-garnishee, the attachment shall become a lien and a continuing levy upon the gross wages due or to become due to the judgment debtor for the amount specified in the attachment to the extent of 25% of the amount by which the judgment debtor's disposable wages for that week exceed 40 times the minimum hourly wage, as prescribed in [§32-1003] ("minimum hourly wage"), in effect at the time the wages are payable.").

Thus, even if a portion of Debtor's wages are subject to attachment at the employer-garnishee level, the Debtor is still placing the balance of his wages beyond the reach of his creditors by transferring them to his wife's bank account.  *See* Motion at p. 10 (acknowledging that "the non-garnishable portion of his pay [was] deposited into a bank account in the name of his wife."). Consequently, the Debtor's suggestion that the availability of an employer-garnishee remedy is

somehow an indication that the Debtor lacked the intent to hinder, delay or defraud his creditors by transferring his property to his wife is nonsensical.

Likewise, the Debtor's argument that his wife's bank account "could have just as easily been titled as a tenancy by the entirety asset" and therefore exempt from execution by the Debtor's creditors, is based on flawed logic and ignores reality. As alleged in the Complaint, the CSB Account is titled solely in the name of Debtor's wife, Annie Luttrell. *See* Complaint at ¶¶ 19, 33, 43, 65. At least according to the Debtor's schedules and his testimony during his 341 Meeting of Creditors, he does not have a joint account with his wife. Accordingly, the Debtor's reliance on *Morrison v. Potter*, 764 A.2d 234 (D.C. 2000) as establishing a presumption that a joint account held by husband and wife is presumed to be held as tenants by the entireties misses the point, because the CSB Account is not a joint account, but rather is owned *solely* by Annie Luttrell. The fact that the CSB Account could have been titled in a different manner in no way suggests that the Debtor's intent to hinder, delay or defraud his creditors is somehow lacking.

Indeed, the Debtor misapprehends the allegation in the Complaint that, although not an owner or holder of the CSB Account, the Debtor exercises control over the funds in that account and uses those funds to pay his personal expenses. *See* Complaint at ¶ 44. Rather than turning the CSB Account into something that it is not (*i.e.* a tenants by the entirety asset that is otherwise exempt from attachment by Debtor's creditors), Debtor's exercise of control over the CSB Account is one of the "badges of fraud" that establishes evidence of Debtor's intent. Such badges of fraud include:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.

*Agai v. Antoniou* (*In re Antoniou*), 515 B.R. 9, 18-19 (Bankr. E.D.N.Y. 2014) ("In particular, '[t]he transfer of property by the debtor to his spouse while insolvent, while retaining the use and enjoyment of the property, is a classic badge of fraud.'") (quoting *In re Kaiser*, 722 F.2d 1574, 1582-83 (2d Cir. 1983)); *see also Fiala v. Lindemann* (*In re Lindemann*), 375 B.R. 450, 466 (Bankr. N.D. Ill. 2007) ("In determining whether a debtor has acted with intent to defraud under § 727, the court should consider the debtor's 'whole pattern of conduct.'") (citations omitted).

Here, as alleged in the Complaint, virtually all of the foregoing badges of fraud are present, including (i) the transfer of property to a family member for no or inadequate consideration, Complaint at ¶¶ 19, 33; (ii) the Debtor's retention of benefit, use or control over the property by exercising control over the funds and using them to pay his personal expenses, *id*. at ¶ 44; (iii) the Debtor's precarious financial condition before and after the transfers at issue, and the pendency or threat of suits by creditors, *id*. at ¶¶ 16-38; and (iv) the general chronology of the events and transactions under inquiry, including the Debtor's closing of a personal bank account that he had owned and used for almost two decades, and instead transferring all of his wages to his wife via her solely owned bank account. *Id.* at ¶¶ 19, 26, 33, 43.

Plaintiffs have stated a plausible claim that the Debtor, by transferring his wages to his wife, has violated section 727(a)(2)(A) of the Bankruptcy Code. The Debtor's fanciful argument that the act of "one spouse [putting] money into the other spouse's bank account" is not "fodder for attack under Section 727" and would effectively deprive a "married debtor" of the benefit of chapter 7 relief, *see* Motion at p. 9, is contrary to law and without merit. *See, e.g., Agai v. Antoniou* (*In re Antoniou*), 515 B.R. 9, 17-20 (Bankr. E.D.N.Y. 2014) (debtor's diversion of his paychecks to wife's account warranted summary judgment under section 727(a)(2)(A)); *Future Time, Inc. v. Yates*, 26 B.R. 1006, 1008-09 (M.D. Ga. 1983) (denying debtor's discharge under section 727(a)(2)(A) and finding that "[e]ach time that appellant cashed his paycheck and transferred a

substantial portion of his weekly earnings to his wife to be deposited in her personal checking account, he reduced assets which would have been available to his creditors.").

### C.  Count III of the Complaint States a Plausible Claim for Relief.

In Count III of the Complaint, Plaintiffs allege that the Debtor failed to keep or preserve recorded information, including books, documents, records, and papers, relating to Review, in violation of section 727(a)(3) of the Bankruptcy Code.  Complaint at ¶¶ 70 – 76.  The Debtor accuses Plaintiffs of offering only "labels and conclusions" in contravention of *Iqbal* and *Twombly*. *See* Motion at p. 12.  However, the Debtor ignores the fact that Count III is based on the Debtor's own words and his sworn testimony at his Rule 2004 examination, where, as alleged in the Complaint, he "admitted that he has not kept or preserved all of Review's financial records." Complaint at ¶ 72 (noting Debtor's testimony at his Rule 2004 examination that while he has "a folder with financial documents in it," he did not think it was "exhaustive by any extent.").

Plaintiff's claim under section 727(a)(3) is further supported by allegations in the Complaint that, at his meeting of creditors and at his Rule 2004 examination, the Debtor was unable to provide specific information about certain of his financial affairs and made conflicting statements about such affairs, including when he closed his personal bank account and when Review ceased operations.  *See* Complaint at ¶ 73 ("At the meeting of creditors and at a Rule 2004 examination in this case, the Debtor was unable to provide specific information about certain of his financial affairs and made conflicting statements about his financial affairs, including when he closed his personal bank account and when Review ceased operations."); *see also id.* at ¶ 26 ("Although Debtor stopped using his personal Wells Fargo account and allowed it to be closed in 2021, he testified at the meeting of creditors in this case that the account was closed in 2019."); *id.* at ¶ 32 ("In or about June or July of 2021, while the Superior Court Action and other litigation against Debtor was pending, Debtor ceased operating Review).

Furthermore, while Debtor ceased operating Review in or about June or July of 2021, at his 341 meeting of creditors, the Debtor testified that Review ceased operating in the middle of 2020 and that the last time the Debtor took a draw from Review was in 2019.  And as further alleged in the Complaint, the Debtor and Review actively avoided responding to Plaintiffs' post-judgment discovery in connection with the Superior Court Action, which led to the issuance of a bench warrant and the Debtor's arrest by the United States Marshalls to secure his attendance before the Superior Court for a Civil Bench Warrant Hearing.  *See* Complaint at ¶ 41.  Debtor's and Review's repeated failure and refusal to produce all documents requested by Plaintiffs strongly suggests the Debtor did not take his recordkeeping obligations seriously.  *Id.*  Importantly, the documents that Plaintiffs have been able to obtain to date show a complex series of transfers over the years among accounts owned by the Debtor, Annie Luttrell, Review, and the Debtor's mother, Sandra Luttrell.  *Id.*

Even in light of the Debtor's own failures to produce documents to Plaintiffs, the Debtor criticizes Plaintiffs for not identifying "what records were allegedly destroyed or lost," *see* Motion at p. 11, but cites no authority for the proposition that a plaintiff is required to identify documents and records that a debtor is alleged *not to have in his or her possession*.  The Debtor also argues that the Complaint lacks a "colorable allegation that the subject records would meaningfully touch upon" the Debtor's financial condition or business transactions.  *Id*. at 12.  But the Debtor cannot seriously contend that documents and records concerning his wholly owned contracting company are not relevant to the Debtor's financial condition or business transactions.

Accepting the factual allegations in the Complaint as true for purposes of the Debtor's motion to dismiss and granting Plaintiffs the benefit of all inferences that can be drawn based on the facts alleged, *see Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.,* 436 F. Supp.

3d 354, 357–58 (D.D.C. 2020), Plaintiffs have stated a plausible claim for relief under section

727(a)(3) of the Bankruptcy Code.  Accordingly, the Debtor's Motion should be denied.

### D.  Count IV of the Complaint States a Plausible Claim for Relief.

In Count IV of the Complaint, Plaintiffs allege that the Debtor knowingly and fraudulently

made a false oath or account in violation of section 727(a)(4)(A) of the Bankruptcy Code.  In his

Motion, the Debtor focuses on four false statements made by the Debtor in connection with his

bankruptcy case and suggests that each of the false statements should be chalked up to "human

fallibility."  *See* Motion at pp. 12-13.  But the Debtor does not tell the whole story.

In addition to the Debtor's failure to identify a beneficial interest in his wife's solely owned

bank account (as evidenced by the Debtor's continuing exercise of control over the account and

the use of funds in that account to pay the Debtor's personal expenses), and the Debtor's false

statements about claims of the Small Business Administration, Prince Funding (a former lender to

the Debtor), and Debtor's former counsel, *see* Complaint at ¶¶ 44, 47, 48, 49, 83, 84, 85, the

Complaint further alleges the following:  (i) in his Schedule J, the Debtor falsely claimed his

monthly income or home ownership expenses for his residence is $1,500.00, but at his Rule 2004

examination, he testified under oath that the mortgage is paid from funds in the CSB Account

owned solely by his wife, *see* Complaint at ¶¶ 50 – 52, 87; (ii) although the Debtor stopped using

his personal Wells Fargo bank account and allowed it to be closed in 2021, he testified at the

meeting of creditors that the account was closed in 2019, *id.* at ¶ 26, 87; (iii) although the Debtor

ceased operating Review in or about June or July of 2021, he testified at the meeting of creditors

that Review ceased operating in the middle of 2020 and that the last time the Debtor took a draw

from Review was in 2019, *id.* at ¶ 32, 87; and (iv) at his Rule 2004 examination, the Debtor testified

under oath that he has moved money from the CSB Account to a Charles Schwab brokerage

account owned by his wife, and that the Debtor has bought and sold stocks in the brokerage

account, but the Debtor failed to list any ownership interest in any stocks or brokerage accounts in his Schedules, *id*. at 81-82, 87.

The Debtor further argues that Plaintiffs have failed to state a claim under Count IV of the Complaint because, according to the Debtor, the allegations of fraud are not pleaded with particularity.  *See* Motion at p. 13.  But this is not the case, as the Complaint does set forth the "who, what, when where and how of the alleged fraud," *see id*., identifying with particularity the number of false statements made by the Debtor under oath in his bankruptcy case.  And while the Debtor tries in vain to downplay his numerous false statements, when the Debtor's pattern of conduct as set forth throughout the Complaint is considered as a whole, it is evident that Plaintiffs have adequately and plausibly alleged that the Debtor has acted with the necessary intent in making a false oath or account.  *See Fiala v. Lindemann (In re Lindemann)*, 375 B.R. 450, 466 (Bankr. N.D. Ill. 2007) ("In determining whether a debtor has acted with intent to defraud under § 727, the court should consider the debtor's 'whole pattern of conduct.'").

IV.    <u>Conclusion</u>

WHEREFORE, Creditors Sarah E. Krieger Trust, Sarah E. Krieger and Evan Klondar respectfully request that the Court deny the Motion and grant them such other or further relief as is just and appropriate.

**[SIGNATURE PAGE FOLLOWS]**

Dated: September 20, 2023

**TAYMAN LANE CHAVERRI LLP**

*/s/ Jeffrey Rhodes*
Katie Lane Chaverri (DC Bar No. 502976)
Jeffrey Rhodes (DC Bar No. 456371)
Tayman Lane Chaverri LLP
2001 L Street NW, Suite 500
Washington, DC 20036
kchaverri@tlclawfirm.com (202-695-8146)
jrhodes@tlclawfirm.com (202-921-4080)

*Counsel to the Sarah E. Krieger Trust, Sarah E. Krieger and Evan Klondar*

## CERTIFICATE OF SERVICE

I, Jeffrey Rhodes, hereby certify that on September 20, 2023, a true and correct copy of

the above *Opposition to Motion to Dismiss* was served to all parties of record via CM/ECF.

*/s/ Jeffrey Rhodes*
Jeffrey Rhodes (DC Bar No. 456371)