**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE:<br><br>JASON DANIEL LUTTRELL,<br><br>　　　　　Debtor.<br><br>————————————————<br><br>SARAH E. KRIEGER TRUST, SARAH E. KRIEGER AND EVAN KLONDAR,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>JASON DANIEL LUTTRELL,<br><br>　　　　　Defendant. | Case No. 23-00056-ELG<br>Chapter 7<br><br><br><br><br><br><br><br><br><br><br>Adv. Pro. No. 23-10020-ELG |

**FIRST AMENDED COMPLAINT (I) TO DETERMINE**
**NON-DISCHARGEABILITY OF DEBT AND (II) OBJECTING TO DISCHARGE**

Creditors Sarah E. Krieger, Evan Klondar and the Sarah E. Krieger Trust ("Plaintiffs"), pursuant to 11 U.S.C. §§ 523 and 727 and Rules 4004, 4007, 7001(4) and 7001(6) of the Federal Rules of Bankruptcy Procedure, for their complaint against defendant Jason Daniel Luttrell (the "Debtor" or "Luttrell") (i) seeking a determination that the debt owed by the Debtor to Plaintiffs is excepted from discharge and (ii) objecting to the entry of a discharge in the above-captioned bankruptcy case, allege as follows:

---

Katie Lane Chaverri (DC Bar No. 502976)
Jeffrey Rhodes (DC Bar No. 456371)
Tayman Lane Chaverri LLP
2001 L Street NW, Suite 500
Washington, DC 20036
kchaverri@tlclawfirm.com (202-695-8146)
jrhodes@tlclawfirm.com (202-921-4080)

**Jurisdiction and Venue**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I) and (J).

4. Plaintiffs consent to entry of final orders or judgment by the bankruptcy court.

**Parties**

5. Plaintiff Sarah Krieger is a natural person residing within the District of Columbia, and a creditor of the Debtor.

6. Plaintiff Evan Klondar is a natural person residing within the District of Columbia, and a creditor of the Debtor.

7. The Sarah E. Krieger Trust is a trust settled within the District of Columbia, and a creditor of the Debtor.

8. Defendant Jason Daniel Luttrell is a natural person residing within the District of Columbia and the Debtor in the above-captioned case.

**Factual Background**

9. Review Development LLC ("Review") is a limited liability company organized under the laws of the District of Columbia in or about May 2012. At all times relevant, the Debtor owned 100% of the membership interests in Review. Review is an alter ego of Luttrell.

10. On or about November 7, 2017, Plaintiffs entered into an agreement (the "Agreement") with Review for the renovation of real property located at 1419 S Street, NW, Washington, DC 20009 (the "Project").

11. Prior to entering into the Agreement, the Debtor and Review made various representations regarding the Debtor's and Review's extensive construction experience and abilities that were false and that were relied upon by Plaintiffs.

12. Over the life of the Project, Plaintiffs discovered that several of the Debtor's representations were untrue when several significant defects in workmanship, many of which affected their safety, came to light.

13. On December 2, 2018, Review sent a document titled "Project Invoice – Sub. Complete" detailing Review's false contention as to the status of the purported work completed and the then-existing payments.

14. In 2019 and 2020 and continuing thereafter, Debtor and Review were in financial distress.

15. In 2019 and 2020, Debtor and Review borrowed funds pursuant to short-term loans from merchant cash advance (MCA) lenders to fund operations. Debtor would also receive transfers of funds from his mother to meet Review's payroll and other obligations.

16. In or about February or March of 2020, while still managing and operating Review, Debtor took a part-time job working for AllenBuilt, Inc. ("AllenBuilt"), a general contractor and design/build firm operating in the Washington, D.C. metropolitan area.

17. At the time he started working for AllenBuilt, Debtor held a personal bank account at Wells Fargo bank. Although he had his own bank account, at Debtor's direction, AllenBuilt deposited all of Debtor's wages directly into a bank account solely owned by Debtor's wife, Annie Luttrell, who is not a co-obligor of the debts of Debtor or Review.

18. On or about August 26, 2020, Michael Radkowski Raviv ("Raviv") filed a complaint against Debtor with the Consumer Protection Unit of the District of Columbia Department of Consumer and Regulatory Affairs (the "DCRA") relating to a 2018 renovation project to be performed by Debtor and Review. The DCRA issued an investigative report stating that Debtor "walked off the job and did not complete it," and "refuses to return the deposit or complete the work."

3

19. On or about November 12, 2020, the DCRA issued a Notice of Infraction to Debtor and Review for violations of D.C. Code §§ 28-3904(e) ("misrepresent as to a material fact which has a tendency to mislead") and 28-3904(n) ("cease work on, or return after ceasing work on, an electrical or mechanical apparatus, appliance, chattel or other goods, or merchandise, in other than the condition contracted for, or to impose a separate charge to reassemble or restore such an object to such a condition without notification of such charge prior to beginning work on or receiving such object"). Mr. Raviv would later file, on or about June 23, 2022, a complaint against Debtor in the Superior Court of the District of Columbia for damages arising from the 2018 project.

20. When asked about DCRA fines during the meeting of creditors in this case, Debtor testified that a previous client had made a complaint, but that he (Debtor) could not remember what the fines related to.

21. On November 17, 2020, Plaintiffs, by counsel, filed a *Verified Complaint* (the "Verified Complaint") against Debtor and Review in the Superior Court for the District of Columbia (the "Superior Court"), thereby commencing Case No. 2020-CA-004714-B (the "Superior Court Action"). A true and correct copy of the Verified Complaint is attached hereto as **Exhibit "A"**.

22. The Verified Complaint alleged, *inter alia*, that the Debtor and Review made various false and fraudulent representations regarding the Debtor's and Review's licensure, abilities, and performance that Plaintiffs relied upon. *See* Ex. A., Verified Complaint, ¶¶ 11-15, 24, 26, 31, 35-36, 41-44.

23. On or about December 1, 2020, Classic Hardwood Floors Inc. filed a complaint against Debtor in the Circuit Court for Montgomery County, Maryland (the "Classic Hardwood Litigation"). Debtor did not defend the Classic Hardwood Litigation, and testified under oath that

he contemplated filing bankruptcy after the Superior Court Action and Classic Hardwood Litigation were filed.

24.     On December 14, 2020, Debtor and Review, by counsel, filed in the Superior Court Action their *Answer, Affirmative Defenses and Counterclaim of Defendants Review Development LLC and Jason Luttrell* (the "Counterclaims").

25.     In early 2021, while the Superior Court Action was pending, Debtor and Review continued to be in financial distress. During this time, Review had serious cash flow problems and often had insufficient funds to cover checks written from its bank account.

26.     In early 2021, while the Superior Court Action and other litigation against him was pending and Review's business operations were in decline, Debtor stopped using his personal bank account at Wells Fargo, an account that he had held for almost two decades, and allowed the account to be closed. Although Debtor stopped using his personal Wells Fargo account and allowed it to be closed in 2021, he testified at the meeting of creditors in this case that the account was closed in 2019.

27.     After Plaintiffs filed the Verified Complaint in November 2020, the Debtor refused to comply with his discovery obligations and failed to produce personal and business records to Plaintiffs while during that same timeframe he was making extensive efforts to shield money from his creditors.

28.     Specifically, the Debtor caused Review to make numerous fraudulent transfers and fraudulent conveyances to accounts held exclusively by the Debtor's wife, and to pay his wife's debts from Review's Bank of America account.

29.     For example, only days after Review received $25,835.00 as part of the CARES Act Paycheck Protection Program on January 27, 2021, the Debtor, on February 4, 2021, directed

5

Review to transfer $24,775.00 from its Bank of America account to a Charles Schwab bank account (the "CSB Account") held exclusively by the Debtor's wife.

30. On March 23, 2021, April 4, 2021, April 14, 2021, April 28, 2021 and May 13, 2021, the Debtor fraudulently directed Review to transfer $18,523 over several transactions to pay down a Chase credit card held exclusively by the Debtor's wife.

31. Between February and May of 2021, the Debtor caused several cash withdrawals from Review's Bank of America account in the aggregate amount of approximately $18,500 and has not explained where that money went or what it was used for.

32. Between January and May of 2021, the Debtor fraudulently transferred approximately $45,000 from Square (also known as Block, Inc.) accounts he controlled to Review's Bank of America Account.

33. These are only a few examples of conduct that demonstrates the Debtor's fraudulent intent and efforts to hinder, delay and defraud creditors.

34. On January 4, 2021, Plaintiffs filed in the Superior Court Action (i) a motion to dismiss the Counterclaims filed by Debtor and Review, and (ii) a motion for partial judgment on the pleadings on Count I of the Plaintiffs' Verified Complaint for violation of the D.C. Consumer Protection Procedures Act.

35. On January 19, 2021, Debtor and Review, by counsel, filed (i) an opposition to Plaintiffs' motion to dismiss Debtor's and Review's Counterclaims, and (ii) an opposition to Plaintiffs' motion for partial judgment on the pleadings.

36. On February 17, 2021, the Superior Court denied Plaintiffs' motion to dismiss and motion for partial judgment on the pleadings.

37. On March 3, 2021, Plaintiffs filed an answer to Debtor's and Review's Counterclaims. Thereafter, the parties continued to litigate the Superior Court Action.

38. On July 29, 2021, Jackie T. Meier, counsel for Debtor and Review in the Superior Court Action, , filed a motion to withdraw as counsel of record. On August 17, 2021, the Superior Court entered an order granting Ms. Meier's motion and authorized her withdrawal from the case.

39. In or about June or July of 2021, while the Superior Court Action and other litigation against the Debtor was pending, the Debtor ceased operating Review. At the meeting of creditors in this case, the Debtor testified that Review ceased operating in the middle of 2020 and that the last time the Debtor took a draw from Review was in 2019.

40. However, documents Plaintiffs obtained during post judgment discovery demonstrate that the Debtor was still controlling Review's finances as of at least 2021.

41. In or about September of 2021, while the Superior Court Action and other litigation against the Debtor was pending, Debtor took a position with Fajen & Brown, a home builder and renovator based in Hyattsville, Maryland. At Debtor's direction, Fajen & Brown deposits Debtor's wages directly into a bank account solely owned by Debtor's wife, Annie Luttrell, who is not a co-obligor of the debts of Debtor or Review.

42. On September 23, 2021, the Superior Court held a status hearing. Neither Debtor nor Review appeared at the September 23, 2021 status hearing. On September 24, 2021, the Superior Court entered an order directing Debtor and Review to appear at a status hearing scheduled for October 22, 2021 or risk the entry of default judgment against them.

43. The Superior Court held a status hearing on October 22, 2021, at which Debtor appeared pro se. The Superior Court set the matter for "ascertainment of counsel" at a further status hearing scheduled for November 19, 2021.

44. Neither Debtor nor Review appeared at the November 19, 2021 status hearing. The Superior Court entered default against Debtor and Review in the courtroom at the November 19, 2021 hearing.

45. On January 31, 2022, the Superior Court (Hon. Yvonne M. Williams) held an ex parte proof hearing on Plaintiffs' motion for default judgment and Plaintiffs Sarah Krieger and Evan Klondar appeared, and gave sworn testimony as to the Debtor's fraudulent conduct and misrepresentations, Plaintiffs' reliance on the Debtor's misrepresentations, and how his lack of experience and shoddy workmanship caused them harm and put them in danger. A true and correct copy of the transcript of the January 31, 2022 hearing is attached hereto as **Exhibit "B"**.

46. Plaintiff Evan Klondar testified as to the Debtor's false oral and written representations that the Debtor and Review were capable of performing the work and that he and Plaintiff Sarah Krieger relied on the Debtor's false representations that he and Review were fully qualified and capable of performing the services required for the project.

47. Plaintiff Sarah Krieger testified that replacement contractors and an inspector confirmed that much of the Debtor's work was not only defective and unworkmanlike, but that permits had not been closed out and several aspects of the work did not meet code.

48. Referring to an inspection report Plaintiffs had submitted as an exhibit in support of the judgment, Ms. Krieger further testified that at least $56,000 of additional work would need to be performed to rectify the harm the Debtor had done to their property and to make the property code compliant.

49. Ms. Krieger further testified that she discovered several of the permits the Debtor and Review had affixed to Plaintiffs' windows were illegitimate "shadow permits," that the contractors whose names appeared on those permits had not actually performed the work, and that in one instance, a named tradesman could not have performed the work because he was deceased.

50. At the conclusion of the hearing, Plaintiff's counsel sought $82,268 to cure the workmanship defects and a separate amount of $224,710 80 for violation of various provisions of

the District of Columbia Consumer Protection Act (specifically excluding the licensure issue as a basis for such award).

51. At the January 31, 2022 hearing, Judge Williams ruled from the bench in favor of Plaintiffs with respect to $82,268 to cure the workmanship defects and $224,710 80 for violation of the District of Columbia Consumer Protection Act.

52. Rather than ruling on treble damages and attorneys' fees, Judge Williams took those aspects under advisement, stating that she would need to review the statute, facts, and testimony to determine whether treble damages were warranted under the circumstances.

53. Later that day, Judge Williams entered an Order Granting Motion for Default Judgment (the "Judgment") in favor of Plaintiffs. The Judgment awarded Plaintiffs damages for violation of the District of Columbia Consumer Protection Act based on representations by Debtor and Review that were false and relied upon by Plaintiffs in entering into the Agreement for the renovation Project. The D.C. Superior Court awarded $555,012.80 to Plaintiffs, including actual and treble damages for violation of the District of Columbia Consumer Protection Act, plus $47,029.52 for attorneys' fees and costs. A true and correct copy of the Judgment is attached hereto as **Exhibit "C."**

54. Neither Debtor nor Review filed an appeal of the Judgment or a motion to alter or amend the Judgment, which is final and non-appealable.

55. After the Judgment was entered, Plaintiffs sought post-judgment discovery from Debtor and Review.

56. Debtor and Review actively sought to avoid responding to Plaintiffs' post-judgment discovery. At one point, a bench warrant was issued for Debtor, and on September 30, 2022, the United States Marshalls arrested Debtor and brought him before the Superior Court for a Civil Bench Warrant Hearing. Plaintiffs' efforts to obtain discovery from Debtor and review continued

9

into early 2023. Despite Plaintiffs' requests, the Debtor and Review failed and refused to produce all documents requested by Plaintiffs including, by way of example and without limitation, all tax filings, contracts, financial statements, and documents concerning how Debtor was compensated by Review. The limited bank and other records that Plaintiffs were able to obtain in the post-judgment discovery and in connection with this case reveal a complex pattern of transfers over the years among accounts owned by the Debtor, Annie Luttrell, Review, and the Debtor's mother, Sandra Luttrell.

57. On February 18, 2023 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 7 of the United States Bankruptcy Code, thereby commencing the above-captioned bankruptcy case.

58. From and after the closing of his personal Wells Fargo bank account in 2021 and continuing through the Petition Date, the Debtor caused his employers to deposit his wages directly into the CSB Account owned solely by his wife, Annie Luttrell, who is not a co-obligor of the debts of the Debtor or Review.

59. Although he is not an owner or holder of the CSB Account, the Debtor exercises control over the funds in the CSB Account and uses the funds in the account to pay his personal expenses.

60. At a Rule 2004 examination in his bankruptcy case, the Debtor testified under oath that he has moved money from the CSB Account to a Charles Schwab brokerage account owned by his wife, Annie Luttrell, and that the Debtor has bought and sold stocks in the brokerage account.

61. The Debtor failed to list in his Schedules any ownership interest in any stocks or in any brokerage account.

62. At the meeting of creditors in this case, the Debtor testified that he owns an Apple watch, yet the Debtor failed to include that asset on his Schedules.

63. In his Statement of Financial Affairs, the Debtor listed a legal action with Prince Funding, identifying the "nature of the case" as a "Judgment," but not indicating whether the status of the case was pending, on appeal, or concluded. In his Schedule E/F, the Debtor listed an unsecured nonpriority claim of Prince Funding in the amount of $0.00, but provided no other information concerning the claim.

64. At the meeting of creditors, the Debtor testified that the Prince Funding loan had not been paid off, that Prince Funding had sued the Debtor in a different state, although he was not sure which, and that he had no idea about the lawsuit or what transpired other than money being taken "right out of" a joint checking account he held with his mother at Wells Fargo. The Debtor could not specify when this happened, but testified that this took place in "2021-ish."

65. At his Rule 2004 examination, the Debtor testified that Prince Funding was an MCA lender that obtained a judgment against him "for some dollar amount," but the Debtor was still unable to provide information about the amount of the judgment, the amount he borrowed from Prince Funding, or when he borrowed the funds.

66. In his Schedule E/F, the Debtor listed a claim of the U.S. Small Business Administration based on an EIDL Loan in the amount of $75,000. At the meeting of creditors in this case, the Debtor testified that the obligor on the EIDL Loan was Review, and that the Debtor did not personally guarantee the EIDL Loan.

67. On or about August 18, 2021, Jackie T. Meier, the attorney who represented the Debtor and Review in the Superior Court Action, filed a claim against the Debtor and Review in the Superior Court of the District of Columbia for unpaid attorneys' fees in the approximate amount of $2,300 (the "Meier Claim"). Although the Debtor never paid the Meier claim and does

11

not dispute that he owes money to the Meier Law Firm, the Debtor failed to disclose the Meier Claim in his Schedules.

68. The Debtor resides in a home located in the District of Columbia that is solely owned by his wife, Annie Luttrell, and that is encumbered by a mortgage under which Annie Luttrell is the obligor.

69. The Debtor is not an obligor on the mortgage encumbering the home owned by his wife, Annie Luttrell.

70. In his Schedule J filed in this case, the Debtor claimed that his monthly rental or home ownership expenses for his residence is $1,500.00. This statement is false, because as the Debtor testified at his Rule 2004 examination, the mortgage is paid from funds in the CSB Account.

## COUNT I

### DETERMINATION OF NONDISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523(a)(2)(A)

71. Plaintiffs incorporate by reference the allegations in the foregoing paragraphs as if fully set forth herein.

72. Section 523(a)(2)(A) provides, in relevant part, that a discharge under section 727 of the Bankruptcy Code does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

73. The Debtor incurred debts to the Plaintiffs.

74. The Debtor's debts to Plaintiffs were incurred by false pretenses, one or more false representations, or actual fraud.

75. Prior to entering into the Agreement, the Debtor and Review represented themselves to have significant experience in renovation projects such as the Project at issue.

76. In connection with the marketing of their services to Plaintiffs, the Debtor and Review made material misrepresentations and material omissions.

77. In entering into the Agreement, Plaintiffs justifiably relied on, and were damaged by, Debtor's knowing and intentional misrepresentations, including misrepresentations regarding his and Review's experience and abilities.

78. The Superior Court entered Judgment in favor of Plaintiffs and against the Debtor (and Review) for violation of the District of Columbia Consumer Protection Act based on representations by the Debtor and Review that were false and relied upon by Plaintiffs in entering into the Agreement for the renovation Project.

79. Debtor's obligation to pay the Judgment is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

**COUNT II**

**DETERMINATION THAT DEBTOR'S DEBTS ARE NOT DISCHARGEABLE PURSUANT TO 11 U.S.C. § 727(a)(2)(A)**

80. Plaintiffs incorporate by reference the allegations in the foregoing paragraphs as if fully set forth herein.

81. Within one year before the Petition Date, the Debtor transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed, property of the Debtor.

82. Within one year before the Petition Date, the Debtor repeatedly caused his employer to deposit the Debtor's wages directly into the CSB Account owned solely by the Debtor's wife, Annie Luttrell.

13

83. The Debtor designed this practice of placing funds beyond the reach of his creditors intentionally, as evidenced by the Debtor's history of causing his and Review's funds to be transferred to his wife's accounts during the years he and Review suffered financial distress.

84. As of the dates of the transfers or removals of Debtor's property, the Debtor had one or more unsecured creditors, including Plaintiffs.

85. The transfer or removal of Debtor's property prevented the distribution of Debtor's property to Debtor's unsecured creditors, including Plaintiffs.

86. Upon information and belief, Debtor, with intent to hinder, delay or defraud one or more of his creditors, transferred or removed, or permitted to be transferred or removed, Debtor's property.

87. By transferring or removing, or permitting the transfer or removal of, Debtor's property with the intent to hinder, delay, or defraud at least one of his creditors, Debtor violated the provisions of 11 U.S.C. § 727(a)(2)(A).

## COUNT III

### DETERMINATION THAT DEBTOR'S DEBTS ARE NOT DISCHARGEABLE PURSUANT TO 11 U.S.C. § 727(a)(3)

88. Plaintiffs incorporate by reference the allegations in the foregoing paragraphs as if fully set forth herein.

89. Upon information and belief, Debtor has failed to keep or preserve recorded information, including books, documents, records, and papers, relating to Review.

90. At his Rule 2004 examination in this case, Debtor admitted that he has not kept or preserved all of Review's financial records, testifying that he has "a folder with financial documents in it" and "I don't think it's exhaustive by any extent."

91. At the meeting of creditors and at a Rule 2004 examination in this case, Debtor was unable to provide specific information about certain of his financial affairs and made conflicting statements about his financial affairs.

92. Upon information and belief, the Debtor's and Review's records, if available to Plaintiffs, would reveal additional transfers made with the intent to hinder, delay or defraud the Debtor's creditors.

93. Specifically, at the meeting of creditors, Debtor first testified that Review did not pay his personal expenses and, later on during the meeting testified that Review did not "regularly" pay his personal bills. When asked specifically about the Silverado listed on Debtor's schedules, Debtor further testified that Review had in fact paid the car payment as "a company expense."

94. At the meeting of creditors, Debtor testified that Review ceased operations as of the middle of 2020, that the last time he took a draw from Review was 2019, and that the funds went into his personal Wells Fargo bank account.

95. At the meeting of creditors, Debtor testified that the last time he had a personal bank account was 2019. However, when the Chapter 7 Trustee's counsel showed the Debtor a Wells Fargo bank statement during a Rule 2004 examination in this case Debtor testified that the personal bank account was "apparently" still active as of at least August 2020.

96. At the meeting of creditors, Debtor testified that he started transferring his paychecks to his wife's bank account when he took a part time W-2 job with AllenBuilt in February or March of 2020 while he was still operating Review.

97. The books, documents, records, and papers relating to Review that Debtor has failed to keep or preserve are books, documents, records, and papers from which Debtor's financial condition or business transactions might be ascertained.

98. The Debtor's failure to keep or preserve recorded information, including books, documents, records, and papers, relating to Review is not justified under all of the circumstances of the case.

99. By failing to keep or preserve recorded information, including books, documents, records, and papers, relating to Review, Debtor violated the provisions of 11 U.S.C. § 727(a)(3).

### COUNT IV

### DETERMINATION THAT DEBTOR'S DEBTS ARE NOT DISCHARGEABLE PURSUANT TO 11 U.S.C. § 727(a)(4)(A)

100. Plaintiffs incorporate by reference the allegations in the foregoing paragraphs as if fully set forth herein.

101. The Debtor signed his Schedules and Statement of Financial Affairs under penalty of perjury.

102. The Debtor's Schedules and Statement of Financial Affairs contain false statements and omissions.

103. At the meeting of creditors and at a Rule 2004 examination in this case, Debtor made conflicting statements about his financial affairs, including when his personal bank account was closed and when Review ceased operating.

104. At a Rule 2004 examination in his bankruptcy case, Debtor testified under oath that he has moved money from the CSB Account to a Charles Schwab brokerage account owned by his wife, Annie Luttrell, and that Debtor has bought and sold stocks in the brokerage account.

105. Debtor failed to list in his Schedules any ownership interest in any stocks or in any brokerage account.

106. Although Debtor never paid the Meier claim and does not dispute that he owes money to the Meier Law Firm, Debtor failed to disclose the Meier Claim in his Schedules.

107. Although Debtor testified at the meeting of creditors in this case that he is not personally obligated to the U.S. Small Business Administration for the EIDL Loan, he listed the debt in his Schedule E/F.

108. Debtor failed to provide in his Schedules and Statement of Financial Affairs complete information concerning a judgment in favor of Prince Funding, including the date and amount of the judgment.

109. Debtor's statement in Schedule J that he has monthly rental or home ownership expenses in the amount of $1,500.00 is false, because Debtor is not an obligor on the mortgage encumbering the home owned by his wife, Annie Luttrell, and the mortgage is paid from funds in the CSB Account.

110. By signing his Schedules and Statement of Financial Affairs under penalty of perjury that contained the false statements and omissions, and by making false statements at the meeting of creditors and the Rule 2004 examination in this case, the Debtor made a false oath or account in connection with the case.

111. The Debtor's whole pattern of conduct as described herein, including his orchestration of complex transfers between several accounts he controlled, and a series of false statements during the meeting of creditors, the Rule 2004 examination, and in his schedules and Statement of Financial Affairs demonstrate that these false oaths and accounts were material as to his financial condition and were made knowingly and fraudulently.

112. By knowingly and fraudulently making a false oath or account in connection with the case, Debtor violated 11 U.S.C. § 727(a)(4)(A).

WHEREFORE, plaintiffs Sarah E. Krieger, Evan Klondar and the Sarah E. Krieger Trust pray for the entry of judgment against Jason Daniel Luttrell (i) determining that the Debtor's obligation to pay the Judgment is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A),

(ii) denying Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A), 727(a)(3), and/or 727(a)(4)(A), (iii) awarding Plaintiffs attorneys' fees as allowable by law; (iv) awarding Plaintiffs costs of suit, and (v) granting Plaintiffs such other or further relief as just and appropriate.

Dated: October 18, 2023

**TAYMAN LANE CHAVERRI LLP**

*/s/ Jeffrey Rhodes*
Katie Lane Chaverri (DC Bar No. 502976)
Jeffrey Rhodes (DC Bar No. 456371)
Tayman Lane Chaverri LLP
2001 L Street NW, Suite 500
Washington, DC 20036
kchaverri@tlclawfirm.com (202-695-8146)
jrhodes@tlclawfirm.com (202-921-4080)

*Counsel to the Sarah E. Krieger Trust, Sarah E. Krieger and Evan Klondar*